UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDI COX,<br><br>        Plaintiff,<br><br>   v.<br><br>WSP USA INC GROUP INSURANCE PLAN,<br><br>        Defendant. | Case No. 24-cv-08812-HSG<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS, GRANTING IN PART AND DENYING IN PART MOTION TO TAKE JUDICIAL NOTICE AND INCORPORATE BY REFERENCE, AND GRANTING MOTION TO SEAL**<br><br>Re: Dkt. No. 21, 22, 22-1, 34-1 |

Before the Court is Defendant WSP USA Inc. Group Insurance Plan's motion to seal, Dkt. No. 21; motion for the Court to take judicial notice and to incorporate exhibits into the complaint, Dkt. Nos. 22-1, 34-1; and motion to dismiss, Dkt. No. 22. For the reasons detailed below, the Court **GRANTS** the motion to seal; **GRANTS IN PART** and **DENIES IN PART** the motion to take judicial notice and incorporate by reference; and **GRANTS IN PART** and **DENIES IN PART** the motion to dismiss.

## I.    BACKGROUND

Plaintiff Andi Cox is an employee group health benefit plan member of Defendant WSP USA Inc. Group's Insurance Plan. Dkt. No. 9 ¶¶ 3–4. Non-party Aetna Life Insurance Company administers the health benefits under the plan and acts on WSP's behalf. *Id.* ¶ 5. Cox is a transgender woman with a diagnosis of gender dysphoria, which causes psychological distress from experiencing a discrepancy between her assigned gender and gender identity. *Id.* ¶ 8.

The Plan provides coverage for "medically necessary" care, which Aetna determines by evaluating whether the treatment is "in accordance with generally accepted standards of medical practice." Dkt. No. 39 at 87, 105. Generally accepted standards of medical practice are defined in plan documents as "Standards that are based on credible scientific evidence published in peer-

United States District Court<br>Northern District of California

United States District Court
Northern District of California

reviewed medical literature generally recognized by the relevant medical community" and "[f]ollow[] the standards set forth in our clinical policies and applying clinical judgment." *Id.* at 105. Aetna separately provides clinical policy bulletins that define what procedures are medically necessary to treat certain conditions, including gender affirming surgery. *See* Dkt. No. 39 at 119–67. That document reads, in relevant part:

> Aetna considers the following procedures that may be performed as a component of gender transition as not medically necessary and cosmetic (not an all-inclusive list). . .
> - Facial Gender Affirming Procedures, including:
>   - Brow (reduction, augmentation, lift)
>   - Hair line advancement and/or hair transplant
>   - Facelift/mid-face lift (following alteration of the underlying skeletal structures) (platysmaplasty)
>   - Blepharoplasty (lipofilling)
>   - Rhinoplasty (+/- fillers)
>   - Cheek (implant, lipofilling)
>   - Lip (upper lip shortening, lip augmentation)
>   - Lower jaw (reduction of mandibular angle, augmentation)
>   - Chin reshaping (osteoplastic, alloplastic (implant-based))
>   - Chondrolaryngoplasty (also known as Adam's apple reduction, thyroid cartilage reduction, or tracheal shave)
>   - Vocal cord surgery

*Id.* at 123.

Cox previously sued WSP for denying her claim for facial hair removal services as part of her treatment for gender dysphoria. Dkt. No. 9 ¶ 38. After litigating before Judge Chhabria, the parties entered a settlement agreement on June 27, 2024, Dkt. No. 39 at 169–73. Cox released "any and all claims" related to the Disputed Claims ("for health benefits related to a facial hair removal") and any claims that Cox asserted "or could have asserted" in that case. Dkt. No. 39 at 169, 171.

In March 2024, Aetna denied Cox's request for coverage for facial feminization surgery. Dkt. No. 9 ¶ 10. Plaintiff alleges that in its denial, Aetna contended that the procedure is not considered medically necessary under the clinical policy bulletin. *Id.* In May, Cox appealed the denial, arguing that the procedure was medically necessary to treat gender dysphoria and providing medical studies that supported a medical necessity finding. *Id.* ¶¶ 11–14. Aetna denied Cox's appeal two weeks later on the ground that "[t]his procedure isn't considered medically

United States District Court
Northern District of California

necessary by our [Clinical Policy Bulletin] and your plan," but did not address the clinical studies Cox provided. *Id.* ¶¶ 15–17.

In June 2024, Cox submitted her second appeal, arguing that the surgery was considered medically necessary by the World Professional Association for Transgender Health, the Transgender Law Center, and the American Psychological Association, and that other health insurance companies cover this care. *Id.* ¶ 18. She argued that the Clinical Policy Bulletin was wrong in its assessment of medical necessity. *Id.* In August, she resubmitted the appeal with a corrected reference number, studies regarding the chin surgery she sought, and a letter of support from her therapist. *Id.* ¶ 22. Aetna denied Cox's second appeal, indicating again that the plan excludes those services. *Id.* ¶¶ 26–27.

Cox now sues WSP for denying her benefits in violation of ERISA and for a declaration that the *Cox I* settlement does not bar the current claims. Dkt. No. 9 ¶ 6–8, 29, 36. Cox alleges that the facial feminization surgery she seeks in this lawsuit is substantively different from the facial hair removal procedure because they have separate CPT codes, providers, places of service, denials, and appeals. *Id.* ¶ 41(a). She further alleges that she could not have asserted the facial feminization claim until September 2024 because she had not exhausted the Plan's internal appeal process before then. *Id.* ¶ 41(b).

## II.    MOTION TO SEAL

### A.    Legal Standard

Courts generally apply a "compelling reasons" standard when considering motions to seal documents attached to dispositive motions. *Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 678 (9th Cir. 2010). "This standard derives from the common law right 'to inspect and copy public records and documents, including judicial records and documents.'" *Id*. (quoting *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006)). "[A] strong presumption in favor of access is the starting point." *Kamakana*, 447 F.3d at 1178 (quotations omitted). To overcome this strong presumption, the party seeking to seal a document attached to a dispositive motion must "articulate compelling reasons supported by specific factual findings that outweigh the general history of access and the public policies favoring disclosure, such as the public interest in

3

understanding the judicial process" and "significant public events." *Id*. at 1178–79 (quotations omitted). "In general, 'compelling reasons' sufficient to outweigh the public's interest in disclosure and justify sealing court records exist when such 'court files might have become a vehicle for improper purposes,' such as the use of records to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets." *Id*. at 1179 (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978)).

The Court must "balance[] the competing interests of the public and the party who seeks to keep certain judicial records secret. After considering these interests, if the court decides to seal certain judicial records, it must base its decision on a compelling reason and articulate the factual basis for its ruling, without relying on hypothesis or conjecture." *Id*. Civil Local Rule 79-5 supplements the compelling reasons standard set forth in *Kamakana*: the party seeking to file a document or portions of it under seal "must explore all reasonable alternatives to filing documents under seal, minimize the number of documents filed under seal, and avoid wherever possible sealing entire documents . . . ." Civil L.R. 79-5(a). The party must further explain the interests that warrant sealing, the injury that will result if sealing is declined, and why a less restrictive alternative to sealing is not sufficient. *See* Civil L.R. 79-5(c).

### B.    Discussion

WSP filed portions of its settlement agreement with Cox under seal. It sought to seal Cox's personally identifiable information, including her birth date, social security number, and bank account numbers, as well as the settlement amount. Dkt. No. 21 at 2. WSP argues that sealing Cox's personal information is supported by the Federal Rules, and that sealing the settlement agreement's financial terms is a common practice in this district that encourages future settlements. *Id.* at 2–3. Cox does not oppose WSP's motion.

The Court finds good cause to seal this information. The public release of Cox's birth date, social security number, and bank account numbers could expose her to risk of loss, and the Federal Rules of Civil Procedure explicitly endorse sealing these sorts of materials. *See* Fed. R. Civ. P. 5.2(a). There is further good cause to seal the settlement amount. The parties included a confidentiality provision in their settlement, and disclosing this personal financial information is

United States District Court
Northern District of California

4

not necessary for the public to understand the nature of this separate case.  Dkt. No. 39 ¶ 9.

WSP's request is narrowly tailored to seal only the materials necessary to protect the interests of

the parties and the public.  Dkt. No. 21 at 3.

The Court therefore **GRANTS** the motion to seal the identified portions of the settlement

agreement attached to the motion to dismiss.

### III.    MOTION TO INCORPORATE DOCUMENTS BY REFERENCE OR TAKE JUDICIAL NOTICE

#### A.    Legal Standard

As a general matter, district courts may not consider material outside the pleadings when

assessing the sufficiency of a complaint under Rule 12(b)(6).  *Lee v. City of Los Angeles*, 250 F.3d

668, 688 (9th Cir. 2001).  However, there are two exceptions to this rule: the incorporation-by-

reference doctrine and judicial notice under Federal Rule of Evidence 201.  *See Khoja v. Orexigen*

*Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018).  Both procedures permit district courts to

consider materials outside a complaint without converting a motion to dismiss into a summary

judgment.  *Id.*; *see Lee*, 250 F.3d at 688–89.

The incorporation by reference doctrine is a judicially created doctrine that allows a court

to consider certain documents as though they were part of the complaint itself.  *Khoja*, 899 F.3d at

1002.  This is to prevent a plaintiff from cherry-picking certain portions of documents that support

her claims, while omitting portions that weaken her claims.  *Id*.  Incorporation by reference is

appropriate "if the plaintiff refers extensively to the document or the document forms the basis of

plaintiff's claim." *Id*.  However, "the mere mention of the existence of a document is insufficient

to incorporate the contents" of a document.  *Id*.  Under the incorporation-by-reference doctrine, a

court may consider evidence on which the complaint "necessarily relies" if: (1) the complaint

refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party

questions the authenticity of the copy attached to the 12(b)(6) motion.  *Marder v. Lopez*, 450 F.3d

445, 448 (9th Cir. 2006).  If these conditions are met, the court may treat such a document as part

of the complaint and may assume the truth of the document's contents for purposes of a motion to

dismiss under Rule 12(b)(6).  *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

United States District Court
Northern District of California

5

However, while a court "may assume [an incorporated document's] contents are true for purposes of a motion to dismiss ... it is improper to assume the truth of an incorporated document if such assumptions only serve to dispute facts stated in a well-pleaded complaint." *Khoja*, 899 F.3d at 1002.

Federal Rule of Evidence 201(b) permits a court to notice an adjudicative fact if it is "not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). In *Khoja*, the Ninth Circuit discussed the judicial notice rule and incorporation by reference doctrine, noting that a court may take "judicial notice of matters of public record," but "cannot take judicial notice of disputed facts contained in such public records." 899 F.3d at 999 (citation and quotations omitted). The Ninth Circuit has held that if a court takes judicial notice of a document, it must specify what facts it judicially notices from the document. *Id.* Further, "[j]ust because the document itself is susceptible to judicial notice does not mean that every assertion of fact within that document is judicially noticeable for its truth." *Id.* As an example, the Ninth Circuit held that for a transcript of a conference call, the court may take judicial notice of the fact that there was a conference call on the specified date, but may not take judicial notice of a fact mentioned in the transcript, because the substance "is subject to varying interpretations, and there is a reasonable dispute as to what the [document] establishes." *Id.* at 999–1000.

**B.    Discussion**

WSP attached the Master Services Agreement, the Choice POS II Enhanced HDHP Plan ("Benefit Booklet"), the Aetna Clinical Policy Bulletin for Gender Affirming Surgery ("Policy Bulletin"), and the Settlement Agreement to its motion to dismiss. In reply, Defendant further attached the Wrap Plan document and a Summary Plan Description, arguing for the first time that Cox's claims are "based upon these [new] documents, the documents' contents are referenced in the Amended Complaint, and their authenticity is not disputed." Dkt. No. 34-1 at 2 n.3. WSP also seeks judicial notice of the public docket in *Cox v. WSP USA Inc. Grp. Ins. Plan*, 4:24-cv-01312-VC (N.D. Cal.) ("*Cox I*").

United States District Court
Northern District of California

### i.    Benefit Booklet, Settlement Agreement and *Cox I* Docket

The parties agree that the Benefit Booklet was incorporated by reference, Dkt. No. 41 at 12:6–24, and Cox did not oppose incorporating by reference the Settlement Agreement or taking judicial notice of the prior case docket. *See* Dkt. No. 33-1; Dkt. No. 34-1 at 2 n.1. So the Court grants these unopposed requests.

### ii.    Master Services Agreement

The Master Services Agreement is a copy of an agreement between WSP and Aetna, which is alleged to administer Cox's health benefit plan. Dkt. No. 9 ¶ 5. WSP claims that the Master Services Agreement is the controlling document for the employee group health benefit plan and that Cox necessarily refers to this document whenever she mentions the Plan. Dkt. No. 22-1 at 3–4. Cox disagrees that this is a plan document because it is a private agreement between WSP and Aetna. Dkt. No. 33-1 at 3. The Court does not need to resolve the incorporation by reference dispute as to this document because it is not relevant to resolving the motion to dismiss.

### iii.    Policy Bulletin

WSP seeks to incorporate the Policy Bulletin by reference because the complaint refers to plan documents and Cox alleges WSP used the bulletin to justify denying her claims. The Complaint alleges WSP and Aetna violated the terms of the Plan in denying her benefits. *See, e.g.,* Dkt. No. 9 ¶ 9 ("The Plan provides benefits"), ¶ 31 ("Following the denial of the request for benefits under the Plan"), ¶ 29(a) ("Failure to authorize and pay for health benefits as required . . . under the terms of the Plan"). Governing plan documents "are those documents that provide individual participants with information about the plan and benefits." *Hughes Salaried Retirees Action Committee v. Administrator of the Hughes Non-Bargaining Retirement Plan*, 72 F.3d 686, 690 (9th Cir. 1995) (interpreting *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 84 (1995)). These documents "allow 'the individual participant [to] know[ ] exactly where he stands with respect to the plan—what benefits he may be entitled to, [and] what circumstances may preclude him from obtaining benefits . . . .'" *Hughes*, 72 F.3d at 690 (quoting S.Rep. No. 127, 93d Cong., 2d Sess. (1974), *reprinted in* 1974 U.S.C.C.A.N. 4838, 4863). More recently, the Ninth Circuit held that an additional document may be considered a plan document when it is authorized by the

7

plan or when it "neither adds to nor contradicts the terms of existing Plan documents." *Mull for Mull v. Motion Picture Indust. Health Plan*, 865 F.3d 1207, 1210 (9th Cir. 2017).

The Benefit Booklet (which the parties agree is incorporated) references policy bulletins in its definition of "medical necessity," drawing it into the "terms of the plan." *See* Dkt. No. 39 at 87, 105, 119–67. Cox alleges that the Policy Bulletin served as Aetna's basis for denying her benefits. Dkt. No. 9 ¶ 10, 12, 18. Then Plaintiff alleges that her internal appeals challenged the Policy Bulletin. Dkt. No. 9 ¶¶ 10, 12, 15–16. Plaintiff claims that the denial of her facial feminization treatment violated the terms of the plan, and the Policy Bulletin contains some of the Plan's terms. The Policy Bulletin, therefore, forms the basis of Plaintiff's claim and is incorporated by reference. *Khoja*, 899 F.3d at 1002.[1]

### iv.    Wrap Plan and Summary Plan Description

At the motion hearing, Cox correctly noted that she did not have the opportunity to respond to the documents attached for the first time on reply. Dkt. No. 41 at 3:21–25. WSP stated that the documents were only provided in response to claims made in Cox's opposition about the standard of review, and said that only the documents filed with the motion to dismiss were necessary to decide the motion. Dkt. No. 41 at 10:7–19. The Court thus declines to incorporate these documents by reference or take judicial notice of them because they are not relevant to deciding the motion to dismiss.

*** 

The Court **GRANTS** the motion to incorporate the Benefit Booklet, the Policy Bulletin, and the Settlement Agreement, but **DENIES** the motion to incorporate the Master Service Agreement, the Wrap Plan, and the Summary Plan Description. The Court **GRANTS** the

---

[1] Cox contends that the Master Services Agreement and Policy Bulletin should not be incorporated because WSP did not "authenticate" them, and further suggests that the documents are inauthentic because she did not receive them. Neither argument constitutes a genuine challenge to the documents' authenticity, and Plaintiff's position is not persuasive. *See Stewart v. Kodiak Cakes, LLC*, 537 F. Supp. 3d 1103, 1119 (S.D. Cal. 2021) (granting motion for judicial notice where plaintiffs did not detail how the documents at issue were "inauthentic, inaccurate, or disputed," and instead only questioned "the manner in which they are presented before the Court," which did not "genuinely question the authenticity"); *Davis v. HSBC Bank*, 691 F.3d 1152, 1161 (9th Cir. 2012) (rejecting challenge to authenticity where party argued that "he did not review or have access to the proffered copies").

United States District Court
Northern District of California

unopposed motion to take judicial notice of the docket in *Cox I*.

## IV.   MOTION TO DISMISS

### A.   Legal Standard

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Rule 12(b)(6).  "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  To survive a Rule 12(b)(6) motion, a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  Nevertheless, courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

### B.   The Settlement Agreement Does Not Preclude Plaintiff's Current Denial of Benefits Claim

Settlement agreements are interpreted like any other contract, *Knudsen v. C.I.R.*, 793 F.3d 1030, 1035 (9th Cir. 2015), giving the usual and ordinary meaning of the words to effectuate the parties' intent.  Cal. Civ. Code § 1636 ("A contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting."); Cal. Civ. Code § 1638 ("The language of a contract is to govern its interpretation, if the language is clear and explicit."); Cal. Civ. Code § 1639 ("When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible.").

United States District Court
Northern District of California

9

The parties entered a settlement agreement resolving Cox's facial hair removal claims in June 2024. Dkt. No. 39 at 173. That settlement defines the "Disputed Claims" as Cox's "claims for health benefits related to a facial hair removal." Dkt. No. 39 at 169 ¶ 1(E). Cox agreed to release all claims against WSP "of any kind connected with the matters of [*Cox I*] and the Disputed Claims" including those that Cox "could have asserted" against WSP. *Id.* at 169 ¶¶ 2–3.

Defendant argues that the settlement agreement bars Cox's new claims since the facial feminization surgery is related to the facial hair removal procedure. Dkt. No. 22 at 16–18. Plaintiff contends that the procedures are different, noting the lack of overlap in CPT codes, providers, places of service, denials, and appeals, Dkt. No. 9 ¶ 41(a), and argues that she could not have asserted the new claims at the time of the settlement. *Id.* ¶ 41(b).

The Court agrees with Cox. The released claims related to facial hair removal treatments. Dkt. No. 39 at 169 ¶ 1(E). Although facial hair removal may be a type of facial feminization, the claims at issue in this case relate to chin surgery. Dkt. No. 9 ¶ 22. And the facts and dates as alleged in the complaint support Cox's argument that her claims regarding facial feminization surgery had not ripened when *Cox I* was being litigated, such that she could not have asserted them there. Dkt. No 9 ¶ 41(b). Cox did not receive the denial of her second internal appeal until September 2024,[2] *id.* ¶¶ 10–11, 22–24, but settled her prior claims in June 2024. Dkt. No. 39 at 173. Accordingly, the record reflects that Cox had not completed the internal appeal process necessary to make her current claim one that she "could have asserted" against WSP in the original lawsuit. The settlement agreement thus does not bar this action, and the Court **DENIES** WSP's motion to dismiss the declaratory relief count.

### C.    Plaintiff Fails to State a Claim for Denial of Benefits

Generally, ERISA does not mandate what benefits employers must provide if they choose to have a plan. *Lockheed Corp v. Spink*, 517 U.S. 882, 887 (1996). Instead, ERISA ensures that when employers offer plans, employees receive the benefits promised. *Id.* The plain terms of the plan, which the Court analyzes *de novo* unless the Defendant establishes otherwise, defines the

---

[2] The parties did not append the internal appeals documentation to the complaint or motion to dismiss, so the Court accepts Cox's characterization of these materials as true.

United States District Court
Northern District of California

scope of benefits due. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989) ("[A] denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.").[3]

WSP contends that Cox has not identified a term of the plan that it allegedly violated and that the treatment Cox sought was expressly excluded by the plan's terms. Dkt. No. 22 at 12. Cox alleges that WSP denied her medically necessary treatment for her gender dysphoria, which she alleges violates the terms of the plan. Dkt. No. 9 ¶¶ 10–14, 18–23. She further argues that the exclusion Defendant cites is an affirmative defense, which the Court may not consider on a motion to dismiss. *Id.* at 11.

For purposes of this motion, the Court accepts the well-pled facts as true, including the claims that the facial feminization procedure has been shown through studies to improve gender dysphoria, independent of any cosmetic benefit, and that Cox would benefit from such a procedure. Dkt. No. 9 ¶¶ 9–23.

But those facts are ultimately beside the point given the nature of the inquiry here. Aetna, on behalf of WSP, approves and denies claims based on what WSP agreed to cover, as explained in the plan documents. The relevant clinical policy document reads, in relevant part,

> **Aetna considers the following procedures that may be performed as a component of gender transition as not medically necessary and cosmetic** (not an all-inclusive list). . .
> - Facial Gender Affirming Procedures, including:
>   - Brow (reduction, augmentation, lift)
>   - Hair line advancement and/or hair transplant
>   - Facelift/mid-face lift (following alteration of the underlying skeletal structures) (platysmaplasty)
>   - Blepharoplasty (lipofilling)
>   - Rhinoplasty (+/- fillers)
>   - Cheek (implant, lipofilling)
>   - Lip (upper lip shortening, lip augmentation)
>   - **Lower jaw (reduction of mandibular angle, augmentation)**
>   - Chin reshaping (osteoplastic, alloplastic (implant-based))

---

[3] The parties dispute whether *de novo* or abuse of discretion is the correct standard here. *Compare* Dkt. No. 33 at 21 *with* Dkt. No. 34 at 13–15. The Court does not need to resolve this dispute, because Plaintiff's claim necessarily fails under either standard for the reasons explained below, which rely on the express language of the Plan.

- Chondrolaryngoplasty (also known as Adam's apple reduction, thyroid cartilage reduction, or tracheal shave)
- Vocal cord surgery

Dkt. No. 39 at 123 (emphasis added).

The Court may only review Aetna's denial under the plain terms of the plan. *See Firestone*, 489 U.S. at 112–13, 115; 28 U.S.C. § 1132(a)(1)(B) (providing right of action for plan participants "to recover benefits due ... under the terms of [a] plan, to enforce [ ] rights under the terms of the plan, or to clarify [ ] rights to future benefits under the terms of the plan."). And to succeed on her denial of benefits claim, Cox must allege that the denial of her claims violated those plan terms. *Doe v. CVS Pharm., Inc.*, 982 F.3d 1204, 1213 (9th Cir. 2020). In other words, the relevant question here is not whether WSP *should* cover certain procedures, but only whether it actually *did* agree to cover them.

Cox's amended complaint alleges that she sought "facial feminization surgery" regarding her chin (or lower jaw). *See, e.g.,* Dkt. No. 9 ¶ 22. Cox alleges that the "generally accepted standards of medical practice" establish the medical necessity of her facial feminization procedure. But she has not plausibly pled that WSP's denial of coverage for that procedure violated the terms of the plan. The Benefit Booklet explicitly incorporates clinical policy bulletins as controlling. Dkt. No. 39 at 105; *see Mull*, 865 F.3d at 1210. The Policy Bulletin defines the type of facial feminization surgery that Cox seeks as "cosmetic" and "not medically necessary." Dkt. No. 39 at 123. Cox clearly disagrees with the Policy Bulletin, and some medical evidence appears to support her view that facial feminization surgery is medically necessary for people with gender dysphoria. But under the terms of the plan—which are the starting and ending point of the Court's analysis under ERISA—Cox fails to state a claim because those procedures are expressly excluded.

Cox argues that the Policy Bulletin creates an exclusion, which she characterizes as an affirmative defense, and contends that she is not required to plead around affirmative defenses. Dkt. No. 33 at 17 (citing *U.S. Commodity Futures Trading Comm'n v. Monex Credit Co.*, 931 F.3d 966, 972 (9th Cir. 2019)). But WSP correctly points out that exclusions laid out in plan documents are not considered affirmative defenses in § 502 cases and can be the basis for granting

United States District Court
Northern District of California

a motion to dismiss. *See, e.g., A.H. v. Anthem Blue Cross*, No. 22-cv-07660-HSG, 2023 WL 3819367 (N.D. Cal. June 5, 2023) (granting motion to dismiss where plan exclusion prevented claims). To successfully state a claim, Cox must identify a specific service that was covered by the plan terms and establish the denial of those benefits. *See* 28 U.S.C. § 1132(a)(1)(B). But here, the plan unambiguously excludes the denied benefit. Therefore, the amended complaint fails to state a claim. The Court **GRANTS** WSP's motion to dismiss the denial of benefits count. Dkt. No. 22.

Plaintiff seeks leave to amend any factual deficiencies in the complaint, Dkt. No. 33 at 30, which the Defendant opposes. Dkt. No. 34 at 19. As discussed, Plaintiff's claim is directly inconsistent with the plain and unambiguous language of the plan. Consequently, Plaintiffs cannot cure the deficiencies in the pleading of their claim, and granting leave to amend would be futile. *See Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (district court should grant leave to amend unless pleading could not possibly be cured by the allegation of other facts); *Regional Med. Ctr. of San Jose v. WH Administrators, Inc.*, No. 17-cv-3357-EJD, 2021 WL 4481667, at *4–*7 (N.D. Cal. Sept. 30, 2021) (granting motion to dismiss without leave because ERISA plan terms did not entitle plaintiff to additional coverage); *Pacini v. Nationstar Mortg., LLC*, No. C-12-4606-SI, 2013 WL 2924441, at *7 (N.D. Cal. June 13, 2013) (denying motion for leave when claims contradicted express terms of contract). The Court accordingly dismisses Count 1 without leave to amend.

## V.   CONCLUSION

The Court **GRANTS** the motion to seal, Dkt. No. 21; **GRANTS IN PART** and **DENIES IN PART** the motion to incorporate and take judicial notice, Dkt. Nos. 22-1, Dkt. No. 34-1; and **GRANTS IN PART** and **DENIES IN PART** the motion to dismiss, Dkt. No. 22.

Given that the Court has found that the settlement agreement does not bar this suit, it appears there is nothing left to decide with respect to Plaintiff's declaratory relief claim. The Court **SETS** a case management conference for February 10, 2026 at 2:00 p.m. to discuss the next steps in the case if any. The hearing will be held by Public Zoom Webinar. All counsel, members of the public, and media may access the webinar information at:

https://www.cand.uscourts.gov/hsg.  All attorneys and pro se litigants appearing for the case management conference are required to join at least 15 minutes before the hearing to check in with the courtroom deputy and test internet, video, and audio capabilities.  The Court further **DIRECTS** the parties to submit a joint case management statement by February 3, 2026.

**IT IS SO ORDERED.**

Dated:   January 16, 2026

HAYWOOD S. GILLIAM, JR.
United States District Judge

United States District Court
Northern District of California